WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Louis Nebel and Amy Lee Nebel, | No. CV-16-08240-PCT-GMS |
| Appellants, | **ORDER** |
| v. | |
| Lawrence J. Warfield, Chapter 7 Trustee, | |
| Appellee. | |

Pending before the Court is an appeal, by Debtors Mark Louis Nebel and Amy Lee Nebel, of an order by the United States Bankruptcy Court granting Trustee Lawrence J. Warfield's Motion to Compel Debtor to Turnover Estate Property. After reviewing the pleadings and record excerpts submitted for purposes of this appeal, the Court affirms the Bankruptcy Court's order as discussed below.

**BACKGROUND**

Debtors filed for Chapter 7 bankruptcy on April 29, 2015. Prior to the petition date, Debtors made several payments related to an upcoming ballet course in North Carolina, which their seventeen-year-old daughter was to attend in June and July of 2015. Trustee filed a Motion to Compel Debtor to Turnover Estate Property on November 18, 2015. As relevant here, the Trustee sought turnover of two things: (1) the equivalent value of the payments related to the ballet course, and (2) 25% of the Debtors' interest in the paid time off ("PTO") each had accrued at their respective places of employment as of the petition date.

A hearing was held on May 2, 2016, and the Bankruptcy Court granted the Trustee's

Motion. In an Amended Post Hearing Order Directing Turnover of Property, issued on July 5, 2016, the Bankruptcy Court clarified its ruling. With respect to the ballet course, Debtors were to "immediately turn over the equivalent value of the Tickets, Ballet Tickets, and Workshop in the amount of $3,491.20"; with respect to the PTO, Debtors were to "turn over twenty-five percent (25%) of the net value of the Estate's pro-rata interest in paid time off in the aggregate amount of $2,297.57 as the Debtors use the paid time off." (Doc. 1 at 7.) Debtors moved for reconsideration, which motion the Bankruptcy Court denied on October 4, 2016. Debtors filed a Notice of Appeal on October 12, 2016, and the matter was assigned to this Court. The matter is now fully briefed. (Docs. 5, 7, 8.)

## DISCUSSION

### I. Legal Standard

Under 28 U.S.C. § 158(a)(1), the Court has jurisdiction over appeals from "final judgments, orders, and decrees" of bankruptcy judges. The Court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law and of mixed questions of law and fact de novo. *In re Icenhower*, 757 F.3d 1044, 1049 (9th Cir. 2014); *see* Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). The clearly erroneous standard requires the Court to accept the bankruptcy court's findings of facts unless "the court is left with the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *See Latman v. Burdette*, 366 F.3d 774, 781 (9th Cir. 2004). The Court must review the evidence on record in the light most favorable to the prevailing party. *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251, 253 (9th Cir. 1991).

### II. Analysis

#### a. Ballet Payments

The bankruptcy estate formed upon the filing of a Chapter 7 action comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." 11. U.S.C. § 541(a)(1). The scope of the estate is broad and includes both tangible and

Motion. In an Amended Post Hearing Order Directing Turnover of Property, issued on July 5, 2016, the Bankruptcy Court clarified its ruling. With respect to the ballet course, Debtors were to "immediately turn over the equivalent value of the Tickets, Ballet Tickets, and Workshop in the amount of $3,491.20"; with respect to the PTO, Debtors were to "turn over twenty-five percent (25%) of the net value of the Estate's pro-rata interest in paid time off in the aggregate amount of $2,297.57 as the Debtors use the paid time off." (Doc. 1 at 7.) Debtors moved for reconsideration, which motion the Bankruptcy Court denied on October 4, 2016. Debtors filed a Notice of Appeal on October 12, 2016, and the matter was assigned to this Court. The matter is now fully briefed. (Docs. 5, 7, 8.)

## DISCUSSION

### I. Legal Standard

Under 28 U.S.C. § 158(a)(1), the Court has jurisdiction over appeals from "final judgments, orders, and decrees" of bankruptcy judges. The Court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law and of mixed questions of law and fact de novo. *In re Icenhower*, 757 F.3d 1044, 1049 (9th Cir. 2014); *see* Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). The clearly erroneous standard requires the Court to accept the bankruptcy court's findings of facts unless "the court is left with the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *See Latman v. Burdette*, 366 F.3d 774, 781 (9th Cir. 2004). The Court must review the evidence on record in the light most favorable to the prevailing party. *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251, 253 (9th Cir. 1991).

### II. Analysis

#### a. Ballet Payments

The bankruptcy estate formed upon the filing of a Chapter 7 action comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." 11. U.S.C. § 541(a)(1). The scope of the estate is broad and includes both tangible and

intangible property. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 (1983).

Here, Debtors made three payments related to the ballet course in the month prior to the petition. First, on March 29, 2015, Debtors purchased airline tickets for $511.20. (Doc. 5-1 at 11.) Second, on April 5, 2015, Debtors paid $800.00, representing half of the ballet course's tuition. (Doc. 5-1 at 14.) Finally, on April 10, 2015, Debtors paid $2,180.00 for the cost of room and board. (Doc. 5-1 at 15.) Thus, as of the date of the petition, Debtors had exchanged $3,491.20 of their money for the right to fly on an airplane and attend a ballet course—services that would be used by their minor daughter after the petition. They thus had a property interest in the tickets and the course.

The parties dispute whether the tickets and the course were refundable and/or transferable, but as the Bankruptcy Court correctly concluded, all of the payments created property interests to which the estate was entitled regardless of their transferability.[1] The Bankruptcy Court for the District of Arizona has previously addressed a case where a trustee sought turnover of the equivalent value of a tax credit, which the debtor had earned but not yet received at the time of the petition. *See In re Nichols*, 309 B.R. 41 (Bankr. D. Ariz. 2004). The court held that the value of the tax credit must be turned over, even though it could not be liquidated or transferred:

> Nothing in § 541 requires that the debtor's interest be immediately capable of being liquidated into cash in order to constitute property of the estate. To the contrary, § 541(c)(1) provides that such debtor's interests become property of the estate even though they could not be liquidated and transferred by the debtor under applicable nonbankruptcy law. Moreover, § 542(a) [governing turnover] is not limited to property that the debtor can transfer in kind to the trustee, because it alternatively requires that the "value of such property" be delivered to the trustee.

*Nichols*, 309 B.R. at 45.

---

[1] Thus, while Debtors complain that the $800 payment was labelled as "ballet tickets" in the Bankruptcy Court's written order, the Bankruptcy Court's legal conclusion as to that payment did not rest on the precise nature of the payment—and, indeed, the recording of the motion hearing reflects that the Bankruptcy Court did not make a factual finding that the $800 payment was any kind of refundable or marketable ticket.

*In re Akanmu*, 502 B.R. 124 (Bankr. E.D.N.Y. 2013), is not to the contrary. There, the trustee sought turnover of tuition payments made by debtor parents to their children's private schools, for schooling that took place *prior* to the filing of bankruptcy. *Akanmu*, 502 B.R. at 128. The trustee therefore sought to recover the payments from the schools under a theory of fraudulent transfer under 11 U.S.C. § 548—not as a property interest existing at the time of the petition. *Id. Akanmu* is thus inapplicable here.[2]

Further, the Bankruptcy Court did not err in determining that the estate was entitled to the full purchase price of the tickets and the course. Debtors argue that the fair market value of the course was actually nothing, because the Debtors' interest in the course could not be liquidated, refunded or transferred. (Doc. 5 at 14–15.) But to accept that such a property interest is of no value to the estate would be inconsistent with the holding of *Nichols*. Further, "'[f]air market value' refers to 'the price that a seller is willing to accept and a buyer is willing to pay on the open market.'" *United States v. Kaplan*, 839 F.3d 795, 800 (9th Cir. 2016) (quoting *Fair Market Value*, Black's Law Dictionary (10th ed. 2014)). It was not clearly erroneous[3] for the Bankruptcy Court to determine that the fair market value of the ballet course was the price that the Debtors paid and the sellers accepted.

The Debtors must therefore turn over the $3,491.20 sought by the Trustee related to the ballet course.

---

[2] Nor does *Akanmu* stand for the proposition, as Debtors seem to suggest, that expenditures on the education of minor children cannot be reached as part of the bankruptcy estate. Indeed, as another court has noted:

> [E]very parent wants to encourage a child's interests and . . . to nurture apparent athletic talent that could even facilitate a scholarship down the road. However, those preferences and hopes for the future simply cannot take precedence over the debtors' other financial obligations. . . . [I]t would be patently unfair for the debtors to continue to make lifestyle choices that ignore their obligation to creditors.

*In re Walsh*, 287 B.R. 154, 157–58 (Bankr. E.D.N.C. 2002).

[3] The fair market value of property is a question of fact. *See, e.g.*, *In re Steen*, 509 F.2d 1398, 1404 n.9 (9th Cir. 1975). The Bankruptcy Court's finding is therefore reviewed for clear error.

### b. Paid Time Off

Debtors had accrued, prior to their petition, a certain amount of PTO. The Bankruptcy Court ordered that, as Debtors use that PTO, they must turn over 25% of the resulting salary they are paid for their time off. In so doing, the Bankruptcy Court correctly recognized that PTO is a presently-existing interest entitling an employee to future payment upon taking an off day, or in some cases, upon separation from employment.

"By including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time." *In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir. 1984). "[E]arnings from services performed prior to bankruptcy are includable within the bankruptcy estate." *Id.* at 1426. Citing *Ryerson*, the Bankruptcy Court for the Southern District of Ohio included a post-petition cash-out of PTO, which had accrued pre-petition, in the bankruptcy estate. *In re LaSpina*, 304 B.R. 814, 817–19 (Bankr. S.D. Ohio 2004); *see also In re Willman*, No. BR 11-40709, 2012 WL 639007, at *1–2 (Bankr. D.S.D. Feb. 16, 2012) (noting that "it is difficult to imagine how § 541(a)(1) could be interpreted to exclude accrued vacation pay from property of the estate" and consequently that "those few courts that have directly addressed the issue have concluded accrued vacation pay is property of the estate"). While the *Willman* court noted the difficulty in turning over accrued vacation *time*, it also noted that "[i]t should go without saying that if Debtors are paid post-petition for any of the vacation time they accrued pre-petition, they must turn that vacation pay over to [the] Trustee." *Id.* at *2 n.8.

Debtors raise two arguments as to why, even if they have possession of the PTO, they should not be compelled to turn over its value in the manner the Bankruptcy Court ordered. Neither is persuasive. First, Debtors acknowledge that 11 U.S.C. § 542(a) compels them to deliver to the Trustee "such property or the value of such property" as is in their possession. But, they argue, they "cannot deliver PTO to the trustee because they do not have access to it" and "they chose not to pay the Trustee its value." (Doc. 8 at 6.)

Setting aside that they *do* have access to the PTO, insofar as it is a presently-existing interest in future payment, Debtors cannot simply "choose" not to pay the value of the accrued PTO while simultaneously arguing that they can't turn over the PTO itself and thus escape both obligations.

Second, Debtors argue that the Bankruptcy Court's order is "unworkable," but provide no authority for this proposition, apart from the guidance of 11 U.S.C. § 704, which states that a trustee should close an estate "as expeditiously as is compatible with the best interests of parties in interest"; and the non-binding Handbook for Chapter 7 Trustees, which likewise states that trustees should not "unduly delay the resolution of the case." These guidelines do not abrogate Congress's "intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time." *Ryerson*, 739 F.2d at 1425. The Bankruptcy Court's order directing turnover of the non-exempt portion of the pre-petition PTO as it is paid out is consistent with the statutory requirements of the bankruptcy process, and the Debtors must turn over the PTO in accordance with that order.[4]

**IT IS THEREFORE ORDERED** that the Bankruptcy Court's Amended Post Hearing Order Directing Turnover of Property, (Doc. 1 at 7–8), is **AFFIRMED**.

Dated this 8th day of June, 2017.

_____
Honorable G. Murray Snow
United States District Judge

---

[4] Debtors' Notice of Appeal filed below also refers to the Bankruptcy Court's order denying reconsideration of the underlying order at issue here. (Doc. 1 at 4.) The parties do not discuss the order denying reconsideration in their briefings; to the extent that Debtors appeal that order, it too is affirmed.

- 6 -